## Casalduc et al. *v.* La Compañía Trasatlántica de Hamburgo.

### Apelación procedente de la Corte de Distrito de Ponce.

No. 17.   Resuelto en Noviembre 9, 1905.

INJUNCTION.—Sus efectos en relación con los tribunales y las partes litigantes.—Los interdictos prohibitorios ó injunctions solo pueden alcanzar, en sus efectos, á las partes litigantes, pero en manera alguna á los Tribunales de Justicia, cuya jurisdicción no puede invadirse ni coartarse por otro Tribunal, á virtud de un interdicto de esa clase.

Apelación.—Documentos no presentados ante la Corte inferior.—El Tribunal Supremo, en el conocimiento de una apelación, no puede tomar en consi-

deración, bajo concepto alguno, ningún documento que no formare parte de los autos ó *record* del Tribunal inferior.

Acumulación de acciones.—Con arreglo á la antigua Ley de Enjuiciamiento Civil, la acumulación de las acciones que tuvieran *uno contra varios,* ó *varios contra uno,* estaba autorizada en una sola demanda, siempre que nacieran de un mismo título, ó se fundaran en una misma causa de pedir, sin que pueda afectar á la jurisdicción de la Corte para conocer de esas acciones así acumuladas, la circunstancia de que, consideradas aisladamente, ninguna de ellas alcanzare, en su cuantía, la suma que como límite señale la Ley para que la Corte tenga jurisdicción.

Causa de acción.—Mandatarios.—Juicio pericial.—Habiéndose estipulado en una póliza de seguro contra incendio que todas las diferencias que surgieran entre la compañía y el asegurado sobre el montante de indemnización en caso de incendio, serían sometidas á un juicio de peritos, señalándose la forma en que éstos habían de ser nombrados, y el modo y procedimiento que debían emplear, el representante de la compañía y el asegurado, en el caso de autos, convinieron en someter tales diferencias á un juicio de *árbitros de derecho,* que requería en los nombrados la cualidad de *letrado* y la intervención de un secretario, de acuerdo con la antigua ley procesal civil, desnaturalizando así lo expresamente estipulado en la mencionada póliza, por lo cual el Tribunal Supremo *resolvió* que el compromiso celebrado entre el representante de la compañía. y el asegurado, era un acto *nulo,* que no podía producir efecto alguno contra dicha compañía, por haberse extralimitado el representante en sus instrucciones, y que por consiguiente, los árbitros así nombrados carecían en absoluto de toda acción para obligar á dicha compañía al pago de los honorarios devengados por los servicios prestados como tales árbitros.

Juicio de árbitros.—Para que el juicio de árbitros resulte válido y eficáz, es indispensable que los propios interesados hagan la elección ó nombramiento de los árbitros, debiendo consignarse el compromiso en escritura pública y hacerse en ella la designación de los árbitros, bajo pena de nulidad.

Obligaciones.—Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse á su tenor.

Mandante.—Mandatarios.—El mandatario queda obligado, por la aceptación, á cumplir el mandato, respondiendo al mandante de los daños y perjuicios que pueda ocasionarle, no pudiendo traspasar los límites del mandato, y si lo hiciere, el mandante no queda obligado por los actos ejecutados sin su autorización, á no ser que los ratificare expresa ó tácitamente.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. *Hernández Usera.*

Abogado de los apelados: Sr. *Casalduc.*

El Juez Presidente Sr. Quiñones, emitió la opinión del tribunal.

La presente es una apelación establecida por el abogado don Francisco H. Dexter en representación de la compañía de seguros contra incendios titulada "La Traslántica de Hamburgo", y continuada después ante esta Corte

Suprema como defensor de dicha compañía por el abogado don José Hernández Usera, contra la sentencia pronunciada por el extinguido Tribunal del Distrito de Ponce en el juicio declarativo de mayor cuantía seguido por el abogado don Felipe Casalduc y Goicoechea, por sí y en representación de sus colegas don Luciano Ortiz Antón y don Francisco Parra Capó y del oficial de sala del mismo Tribunal de Distrito don Gustavo Rodríguez Acevedo, en cobro de ochocientos cincuenta dollars en concepto de honorarios devengados por los demandantes en el juicio arbitral celebrado en la misma ciudad de Ponce para fijar el montante de la indemnización que debiera pagar la compañía por el valor de ciertas mercaderías que habían sido aseguradas en la misma por el comerciante de aquella plaza don Antonio Rodríguez García y que fueron destruídas por un incendio y para cuyo juicio fueron nombrados por el alcalde de Ponce en representación de la compañía y el otro interesado don Antonio Rodríguez como árbitros de derecho, los abogados arriba mencionados don Felipe Casalduc y Goicoechea, don Luciano Ortiz Antón y don Francisco Parra Capó, y el oficial de sala del Tribunal de Distrito don Gustavo Rodríguez Acevedo, como secretario para autorizar todos los actos del juicio.

La sentencia pronunciada por el referido Tribunal de Distrito copiada literalmente dice así:

*Sentencia.*—En la Ciudad de Ponce, Isla de Puerto Rico, á los catorce días del mes de marzo de 1904: Vistos en juicio oral y público los presentes autos declarativos, seguidos entre partes, ante este tribunal de la una, como demandantes, el letrado Don Felipe Casalduc y Goicoechea, por sí y con la representación de sus demás compañeros Don Luciano Ortíz Antón, Don Francisco Parra Capó y Don Gustavo Rodríguez Acevedo, todos mayores de edad y vecinos de esta población: y de la otra, como demandada, la Compañía ''La Trasatlántica de Hamburgo'' (Alemania) sobre seguros contra incendio, representada en Puerto Rico por sus Agentes Generales residentes en Aguadilla, Sres. Sanders Philippi y Compañía, liquidadores Schena-

bel y Compañía, sociedad mercantil de aquella Plaza, declarada en rebeldía, y sobre cobro de la suma de ochocientos cincuenta dollars. Siendo Ponente para la redacción de esta sentencia el Sr. Juez Presidente de la Corte Don Isidoro Soto Nussa.

*Resultando*: que el Letrado Don Felipe Casalduc y Goicoechea, al establecer esta demanda por su escrito de fecha tres de Octubre del año próximo pasado, contra la citada Compañía de Seguros, solicitó se condenase á ésta á pagar á cada uno de los demandantes Don Francisco Parra Capó, Don Luciano Ortíz Antón y Don Felipe Casalduc y Goicoechea doscientos cincuenta dollars y á Don Gustavo Rodriguez y Acevedo cien dollars, imponiéndole, además, todas las costas del juicio, fundando los demandantes esa reclamación en los hechos siguientes: Que por póliza No. 5,368, sustitución de la No. 4,951, Don Antonio Rodríguez García, de Ponce, en marzo 10 de 1901 constituyó un seguro contra incendio en la Compañía "La Trasatlántica de Hamburgo," garantizando del siniestro mercancías que tenía en un almacén, sito en la plaza del mercado de esta Ciudad, casa No. 17, manifestando la Compañía en ese documento que el seguro lo hacía bajo las condiciones generales y particulares obrantes en la misma póliza y por las que ella puede expedirse: que esas condiciones vienen numeradas y la que ostenta el No. XV, dice así: "Tanto la Compañía como el asegurado tiene el derecho de obtener un fallo de Tribunales competentes sobre todas las cuestiones referentes á la validez de esta póliza. Todas las diferencias que puedan ocurrir respecto al monto de indemnización, serán juzgadas únicamente por el arbitraje, y esto siempre antes de que haya sido iniciada alguna demanda judicial por pago de indemnización. Cuando conforme al deseo de la Compañía ó del asegurado el importe de indemnización debe ser fijado por arbitraje, la sumisión al arbitraje será sujetada á las siguientes condiciones: cada parte nombrará perito por un protocolo ó por escrito. Si una de las partes, después de ser notificada por la otra parte á fin de que nombre su perito, y después de haber sido informada del nombramiento del perito de la otra parte, no procede á nombrar el segundo perito dentro de una semana, el nombramiento del segundo perito será hecho por el Cónsul de Alemania ó en su defecto por la Autoridad local competente.—Los dos peritos, antes de entrar en materia nombran un tercero por el caso de discordia, quien decidirá sobre cualquier punto discordado, dentro de los límites de la valuación de los mismos peritos." Hay otras reglas no pertinentes en este asunto y termina así este párrafo

XV). "Los gastos del arbitraje serán soportados por iguales partes entre la Compañía y el asegurado": Que en la noche del doce de noviembre de 1901, se declaró un incendio en el establecimiento mercantil del Sr. Rodríguez y García, en el que se encontraban las mercancías aseguradas por la póliza de que se ha hecho mérito, habiéndose quemado algunas de dichas existencias y salvado otras: que deseando el Sr. Rodríguez y García, fijar el montante de la indemnización por medio de arbitros, atemperándose en las condiciones del No. 15 de la póliza por escritura ante el Notario Don Rafael León, fecha primero de febrero de 1902, designó como arbitro al Licenciado en derecho Felipe Casalduc, pidiendo al mismo tiempo se notificase ese nombramiento al Agente de la Compañía en Ponce, Don Christian Boysen y Monserrat como así se hizo en el mismo día primero, previniéndose además, que dentro del término legal y señalado en la póliza, efectuara la designación del otro perito: que vencido con exceso el término de una semana, y no habiendo llenado ese requisito el Agente de la mencionada Compañía, el asegurado Sr. Rodríguez, por ante el mismo Notario Sr. León, fecha once de febrero del mismo año 1902 levantó otra acta para que el Cónsul de Alemania en esta Ciudad Don Enrique C. Fritze procediera al nombramiento del árbitro en cuestión y notificado ese agente diplomático de lo pretendido, contestó: que hiciera la designación la Autoridad local competente motivo por el cual en acta No. 49, ante el repetido Notario León de doce de febrero de 1902, fué requerido el Alcalde de Ponce Don Enrique Chevalier, y expuso: que á nombre de la Compañía de Seguros contra incendios "La Trasatlántica de Hamburgo" designa como perito para resolver las diferencias del montante de la indemnización de los daños ocasionados por el siniestro mencionado al Licenciado en derecho Don Francisco Parra Capó: y habiendo aceptado dichos señores Casalduc y Parra sus respectivas designaciones en escritura ante el referido Notario Sr. León, de 18 de febrero de 1902, designaron como tercer perito en discordia al Ledo. Don Luciano Ortiz Antón, que fué notificado por el mismo fedatario, manifestando aceptar el cargo: que según escritura de fecha tres de abril de 1902, ante el Notario Sr. Toro Vendrell, el Sr. Antonio Rodríguez García, por su propio derecho, y Don Enrique Chevalier y Chardón, Alcalde de Ponce, y como representante de la Compañía aseguradora, formularon el compromiso de árbitros para que éstos resolvieran sobre el montante de la indemnización que por el siniestro debía pagar la Compañía al asegurado y fijaron el plazo de treinta

y dos días para que se dictara sentencia nombrando como Secretario de los árbitros al Oficial de Sala de la Corte de Distrito, Don Gustavo Rodríguez, fijando la multa de quinientos dollars para la parte que dejare de cumplir cualquier acto para la realización del compromiso, y consignando por último en su cláusula sexta que la Compañía y el asegurado soportarían por iguales partes los gastos del arbitraje: que el once de abril de 1902, recibieron los arbitros el testimonio de la escritura de compromiso, y de acuerdo con el artículo 804 de la Ley de Enjuiciamiento Civil, luego de designar local donde constituirse el Tribunal, por providencia de esa fecha, se señaló á la Compañía aseguradora y al asegurado un plazo de ocho días para formular sus pretensiones y presentar los documentos en que las habían de apoyar, apercibidos de seguir el juicio en rebeldía y del pago de la multa estipulada, notificándose el provisto á las partes en once y catorce de abril de aquel año, 1902: que en diez y ocho de Abril del mismo año, el asegurado Don Antonio Rodríguez García, por medio del Letrado Don Luis Llorens Torres, presentó escrito formulando sus pretensiones acompañadas de los documentos, en los que las hacían descansar, y pidiendo se dictara sentencia declarando el montante de la indemnización que la aseguradora debía abonar al asegurado su cliente: y como la Compañía no llenara ese trámite en tiempo y forma, la parte demandante acusó la rebeldía y los tres árbitros que fueron nombrados, formando Tribunal, tuvieron por presentado el escrito y documentos del Sr. Rodríguez, y por acusada la rebeldía de la demandada, á la que declaró incursa en la multa de quinientos dollars; concediéndose un plazo de dos días para que cada parte impugnara las pretensiones de su contraria, resolución que en todos sus extremos fué notificada á las partes contendientes, al demandante en 25 de abril y al demandado en 26 del mismo mes y año de 1902: que no habiéndose impugnado las pretensiones de los litigantes, el Tribunal de árbitros dictó su auto de mayo primero, abriendo el juicio á prueba por término de ocho días para proponerla y practicarla; y usando de las facultades que le fueron concedidas en la cláusula segunda de la escritura de compromiso amplió á diez y seis días más el plazo de treinta y dos señalados para dictar sentencia: que en tres de mayo, el Letrado de la parte actora presentó su escrito formulando prueba que fué declarada pertinente por el Tribunal que señaló día y hora para la comparecencia de las partes á fin de designar un perito, cuyo día fué el 8 de mayo, en que no compareció más que la parte demandante,

designando á Don Tomás Torres Grau, que fué aprobado por los tres árbitros: que como quiera que el árbitro Don Francisco Parra, venía desempeñando su cometido con la salud quebrantada, el mencionado día ocho de mayo, agravado en sus padecimientos, presentó certificación médica creditiva de serle urgente la inmediata salida de Ponce, y escrito en que por esa causa renunciaba el cargo de árbitro y pidiendo se notificara este incidente á la Compañía y al asegurado para que procedieran á nombrar su sustituto: y hecho el requerimiento, Don Enrique Chevalier, Alcalde de Ponce, como representante de la Compañía Trasatlántica y Don Antonio Rodríguez, por sí, en escritura ante el Notario de Ponce, Don José Ramón Becerra, en nueve del mismo mes de mayo, de mutuo acuerdo, nombraron como árbitro que sustituyera al Sr. Parra Capó, al Licenciado en Derecho Don Rafael Toro Vendrell, quien por ante el mismo Notario, Sr. Becerra, declaró aceptar el cargo y desempeñarlo bien y fielmente: que constituído el Tribunal de árbitro, por los Sres. Don Luciano Ortíz Antón, el Sr. Toro Vendrell, como sustituto del Sr. Parra, y el Sr. Casalduc y Goicoechea, siempre actuando como Secretario el Oficial de Sala, Don Gustavo Rodríguez en doce de mayo, ante él, formuló su dictamen el perito Sr. Torres Grau, y liquidado que fué el período probatorio por estar vencido, el Tribunal citó á las partes para sentencia, que fué dictada en diez y seis de mayo de 1902 por los árbitros y ante su Secretario notificada al demandante, el día veinte y á la Compañía aseguradora en treinta y uno del mismo mes de mayo de 1902; que fijado en ese fallo el montante de la indemnización, la Compañía aseguradora emplazó al asegurado Sr. Rodríguez, para la Corte de Distrito de los EE. UU. para Puerto Rico, donde discutieron si procedía ó no el pago de la indemnización por el siniestro, terminando el litis por transacción: que como el árbitro Sr. Toro Vendrell, vino á ser nombrado en sustitución del Sr. Parra Capó, hizo á éste cesión de honórarios como tal árbitro, por la suma de cien dollars, subrogándole por ello en todos sus derechos y acciones contra la Compañía y el Sr. Rodríguez, motivo por el que dicho Sr. Parra Capó reclama, al igual que sus otros dos compañeros de Tribunal y nada gestiona el Sr. Toro Vendrell: y que los demandantes realizaron los trabajos que como árbitros y Secretario respectivamente se les encomendaron, y habiendo fijado el montante de los honorarios y derechos en quinientos dollars para cada uno de los tres árbitros y en doscientos dollars para el Secretario, reclamaron á los representantes de la "Tras-

atlántica de Hamburgo,'' la mitad que les correspondía pagar de esa suma, ó sean doscientos cincuenta dollars para cada árbitro y cien dollars para el Secretario, es decir, un total de ochocientos cincuenta dollars, sin que se haya podido obtener el pago, motivo original de esta demanda.

*Resultando:* que admitida la demanda, en provisto de fecha seis de Octubre del año pasado, se tuvo por parte en ella por su propio derecho en representación de los demás demandantes, ál Letrado Don Felipe Casalduc y Goicoechea, mandándose dar traslado de la demanda á la Compañía demandada, con entrega de la correspondiente cédula y copia simple de la demanda para que la contestase en el improrrogable término de veinte días, personándose en los autos en legal forma.

*Resultando:* que emplazada la ''Trasatlántica de Hamburgo,'' demandada en la persona de sus Agentes Generales en esta Isla, los Sres. Sanders, Philippi y Compañía, residentes en Aguadilla, en la forma dispuesta y con fecha catorce del citado mes de octubre, expiró con exceso el término otorgádole en la Ley para personarse en los autos y contestar la demanda, sin que hayan hecho uso de ése derecho.

*Resultando:* que la parte actora en su escrito de 19 de enero del corriente año, le acusó la rebeldía á la Compañía demandada solicitando á la vez el recibimiento á prueba del pleito.

*Resultando:* que por providencia del mismo día, el Tribunal le tuvo por acusada la rebeldía á la demandada y por contestada la demanda, y disponiendo que de esa resolución se diera conocimiento á la misma y así se hizo con fecha veinte y uno de Enero, en la persona de sus citados Agentes, Sres. Sanders, Philippi y Compañía, en Aguadilla.

*Resultando:* que convocadas las partes á comparecencia verbal para el acto de proposición de pruebas, el día doce de Febrero último, señalado al efecto, compareció únicamente el Letrado Don Felipe Casalduc, demandante, por sí y en representación de sus demás compañeros, sin que lo verificara la contraria, y propuso las pruebas de que intentaba valerse en el acto del juicio oral de estos autos, consistentes en la documental, pericial y de testigos, por medio de escrito que presentó y se agregó al pleito.

*Resultando:* que señalado para la celebración del juicio oral el día veinte y nueve de Febrero último, á las nueve de la mañana, para la práctica de la prueba propuesta por la demandante, á dicho acto comparecieron el Letrado Don Felipe Casalduc y Goicoechea, por sí y á nombre de sus demás compañeros, y el Ledo.

Don Angel Acosta Quintero, representando á la Compañía deman-
dada, en sustitución de Don F. H. Dexter, y dado principio al
juicio, el Letrado Sr. Acosta, promovió incidente previo alegando
excepción dilatoria por incompetencia de jurisdicción, fundándose
para ello en que la reclamación de cada uno de los demandantes
no llega á cuatrocientos dollars y por tanto, el juicio es de la com-
petencia del Juzgado Municipal, pidiendo á la Corte así lo de-
clarase, por los fundamentos que expuso, y concedida la palabra
á la representación de los demandantes, se opuso á admisión del
incidente, en mérito de las razones que también alegó y dejó so-
metidas á la consideración del Tribunal; incidente que se resolvió,
declarando sin lugar la excepción con costas, por no haberse esta-
blecido al contestar la demanda.

*Resultando*: que practicada la prueba testifical, el testigo Don
Luis Llorens Torres, bajo juramento, declaró: que á voz y nom-
bre de Don Antonio Rodríguez, estableció demanda en juicio ar-
bitral contra la "Trasatlántica de Hamburgo," para fijar su mon-
tante de la indemnización que ésta debía satisfacer á su represen-
tado por el incendio que ocurrió en su almacén, reconociendo co-
mo de su puño y letra todas las firmas que autorizan los escritos
y notificaciones que llevan su nombre en el juicio arbitral que se
le puso de manifiesto. Y el otro testigo, Don Rafael Toro Vendrell,
declaró también bajo juramento, que fué nombrado Juez Arbitro
sustituyendo á Don Francisco Parra, en el pleito seguido por Don
Antonio Rodríguez contra la "Trasatlántica de Hamburgo," habien-
do hecho cesión de sus honorarios como tal árbitro á dicho Sr. Parra
Capó.

*Resultando*: que practicada la prueba pericial, los peritos Abo-
gados Don Horacio Velabal y Veve, Don Luis Yordán Dávila, y
Don José Fernández Corona, bajo juramento declararon, que ha-
biendo estudiado con detenimiento el juicio arbitral seguido por
Don Antonio Rodríguez contra la "Trasatlántica de Hamburgo," y
teniendo en cuenta que cada una de aquellas partes tienen que
pagar la mitad de los gastos del arbitraje, no consideran excesiva,
y sí por el contrario muy justa la suma de doscientos cincuenta
dollars que cobra cada uno de los árbitros, y cien dollars el Se-
cretario, á la Compañía "Trasatlántica de Hamburgo," como mitad
de dichos honorarios, haciendo los peritos al Tribunal, relación deta-
llada del pleito arbitral, explicando el trabajo de los árbitros y
Secretario.

*Resultando*: que terminada la práctica de la prueba de la par-

te demandante, dejó ésta á la consideración del Tribunal la prueba documental, y no teniendo que proponer ninguna la parte demandada, se concedió la palabra por su orden á los Letrados para informar, y oralmente cada uno manifestó al Tribunal lo que juzgó conveniente, en defensa de los derechos de las partes que representan, dándose por terminado el juicio para sentencia, que fué votada en este día por unanimidad.

*Resultando*: que en la tramitación de este pleito declarativo se ha cumplido con las leyes de procedimientos vigentes.

*Considerando*: que el objeto de la presente contienda consiste en determinar si procede la reclamación establecida por los demandantes sobre pago de la mitad de los honorarios devengados por los árbitros nombrados de común acuerdo entre Don Antonio Rodríguez García y la Sociedad aseguradora la "Trasatlántica de Hamburgo," representada por la autoridad local, con el fin de dirimir las diferencias existentes entre aquéllos respecto al pago de la indemnización reclamada por el asegurado con motivo del siniestro ocurrido.

*Considerando*: que los términos del contrato de seguro sobre incendio que sirvió de base á la pretensión del asegurado, son claros y explícitos en todas sus cláusulas, y á su contexto hubo de atemperarse el reclamante al deducir su pretensión ante la Compañía aseguradora, para el pago de la cosa asegurada, lo que no pudo efectuarse por no haber llegado á un acuerdo con dicha Compañía, por lo cual, el asegurado hubo de ampararse en la misma ley del contrato escrito, utilizando al efecto la facultad pactada en dicho contrato de sujetar la resolución de tales diferencias al juicio de árbitros nombrados del modo y forma establecidos en el referido convenio.

*Considerando*: que habiéndose nombrado los árbitros reclamantes, de acuerdo con las estipulaciones del contrato de seguro, mediante el otorgamiento de las correspondientes escrituras públicas, aceptado respectivamente sus cargos y desempeñados totalmente su cometido, con arreglo á las prescripciones legales que regulan esta clase de juicios y á las cláusulas contenidas en dicho contrato, y disponiéndose en una de ellas (cláusula sexta) que los honorarios devengados por los árbitros designados se satisfarían de por mitad entre el asegurado y la Compañía aseguradora, es de todo punto evidente que esta última está directamente obligada al pago de la suma reclamada por los árbitros demandantes en virtud de la cláusula referida que sujeta á las partes contratantes al cumpli-

miento de la misma, con arreglo á las disposiciones del Código Civil vigente y á los principios generales de derecho.

*Considerando*: que siendo esto así, y no habiendo la parte demandada impugnado la cuantía de los honorarios reclamados por los árbitros demandantes, debe tenérsela por legítima y justa con tanta mayor razón, cuanto que la regulación de dichos honorarios, según el dictamen de los peritos letrados que intervinieron en este juicio ha sido hecha con arreglo á conciencia y ajustada á la índole y naturaleza técnica de los actos judiciales realizados por los Jueces árbitros, no siendo á juicio del Tribunal, de ningún modo, excesivo el importe de los mismos.

*Considerando*: que por los razonamientos aducidos, procede declarar con lugar las pretensiones contenidas en la demanda interpuesta, y, en tal concepto imponer las costas á la parte contraria, de acuerdo con la orden general No. 118.

*Vistos* los artículos 1,056, 1,058, 1,063, 1,221, 1,223 y 1,225 del Código Civil; los aplicables de la Ley de Enjuiciamiento Civil y la orden Judicial No. 118.

*Fallamos*: que declarando con lugar esta demanda, debemos condenar y condenamos á la demandada, la "Trasatlántica de Hamburgo," Compañía de Seguros contra incendios, á que dentro del término de quinto día pague á cada uno de los demandantes, Don Francisco Parra Capó, Don Luciano Ortiz Antón y á Don Felipe Casalduc y Goicoechea, doscientos cincuenta dollars, y á Don Gustavo Rodríguez Acevedo, cien dollars: condenando á dicha Compañía al pago de las costas. Así por esta nuestra sentencia lo pronunciamos, mandamos y firmamos.—Firmado.—Isidoro Soto Nussa.—Firmado.—R. Sánchez Montalvo.—Firmado.—E. B. Wilcox."

Contra esta sentencia interpuso apelación el abogado don Francisco H. Dexter en representación de la compañía la que le fué admitida libremente y en ambos efectos con citación y emplazamiento de las partes; y personada la apelante bajo la representación del abogado don José Hernández Usera con las copias prevenidas por el moderno Código de Enjuiciamiento Civil que ya en aquella fecha estaba vigente, presentó su alegato interesando la revocación de la sentencia apelada con las costas á los demandantes y exponiendo en apoyo de su solicitud los siguientes fundamentos legales:

1.—En cuanto á la forma, podemos decir, que el art. 485 de la Ley de E. Civil, dispone: "Que toda cuestión entre partes cuyo interés no exceda de mil pesetas, se decidirá en juicio verbal, y si bien la Orden Judicial No. 118, serie de 1899, elevó la cuantía ó competencia de los Juzgados Municipales á la cantidad de $400, esa cuantía se refiere siempre á toda cuestión entre partes, es decir, al derecho que pueda tener el actor respecto al demandado, pero no al derecho que puedan tener distintos actores, respecto á un mismo demandado. Estamos conformes en que un actor pueda acumular en un mismo juicio las distintas acciones, por razón de la cuantía, que tenga contra un mismo demandado, aunque procedan de diferentes títulos y no sean incompatibles, (Art. 1053 de la Ley de Enj. Civil) pero no podemos admitir que distintos actores, acumulen sus acciones en una misma demanda contra un mismo demandado, haciendo por dicha acumulación cambiar la naturaleza del juicio. La reclamación que hacen los Sres. Casalduc, Ortiz Antón y Parra Capó es la de $250 cada uno; son pues distintos actores y separadamente deben de reclamar su derecho, si lo tienen, pero no acumular sus acciones contra un mismo demandado, y dar al expediente la tramitación de un juicio declarativo de mayor cuantía, por virtud de dicha acumulación, y procedente, cuando han debido de ser distintos juicios verbales ante el Juez Municipal correspondiente, ó sea el de Aguadilla.

2.—Cierto es que en la póliza de Seguro, se estipuló que cualquier diferencia que pudiese ocurrir entre las partes, por razón del monto de la indemnización en caso de siniestro sería fijada por árbitros, mas estos árbitros, son electos y puestos siempre por las partes pero *no por terceras* personas, por cuanto son Jueces avenidores. Desde el momento en que la Compañía "La Trasatlántica," no se avino al nombramiento de Árbitros y no designó á ninguno, el Sr. Rodríguez García, no pudo fabricar á su gusto los Árbitros, y si los fabricó con la ayuda ó intervención del Alcalde de Ponce, Don Enrique Chevalier, y el primero por su audacia y el segundo por su ignorancia, son los que en realidad deben de satisfacer los derechos que se reclaman.

El Art. 790 de la Ley de Enj. Civil, es bien claro y explícito: dice así "(Párrafo 4o.) En ningún caso, los interesados podrán conferir á una *tercera persona*, la facultad de hacer la elección de *árbitros.*"

Ese es un acto *personalísimo* y no puede pues delegarse en un tercero, por lo tanto, si los mismos interesados no pueden con arreglo

á la Ley, designar á ese tercero, para que nombre Arbitros ¿cómo es posible que con arreglo á la Ley, á esa misma Ley de Enjuiciamiento Civil, pueda designarlos el Alcalde, que es un tercero?

3.—En los juicios de Arbitros, todo se somete y cede á la voluntad de las partes contratantes, y no habiendo conformidad entre una y otra, no puede haber juicio arbitral. Este no lo impone la Ley, sino que lo deja á la voluntad de las partes. Por otra parte, el mismo mandatario es sabido, que para nombrar Arbitros, es necesario que tenga poder especial. ¿Dónde estaba el poder especial que á nombre de la Compañía "La Trasatlántica," adornara al Alcalde Chevalier, para hacer la designación de Arbitros?

4.—El Sr. García y Rodríguez ha cobrado con independencia del monto de la indemnización fijada por los Arbitros de la Compañía de Seguros de incendios "La Trasatlántica," los perjuicios que sufriera en su establecimiento mercantil, y no ha tenido ni tiene necesidad de Arbitros para el percibo de aquéllos.

5.—Establece el Art. 4 del Código Civil, la nulidad de todo acto celebrado ó ejecutado contra la Ley. Es así que la Ley de Enj. Civil dispone terminantemente que la elección de Arbitros es personalísima, y no se puede hacer por terceras personas, luego todo lo realizado en ese expediente de arbitraje, es nulo.

6.—El Art. 1,821 de la Ley de Enj. Civil, dispone que, en cuanto al modo de procederse en los compromisos, y la extensión y efectos de éstos, se estará á lo que dispone la Ley de Trámites."

No habiendo comparecido los apelados, no obstante haber sido citados y emplazados en la persona de su representante, se señaló día para la vista. En este estado el abogado defensor de la compañía apelante presentó un nuevo escrito acompañando una certificación autorizada por el secretario de la Corte de Distrito de los Estados Unidos para Puerto Rico, de un auto de *injunction provisional* dictada por dicha Corte de Distrito en doce de octubre de mil novecientos cuatro en un pleito iniciado ante la misma Corte por la compañía de seguros contra incendios "La Trasatlántica," contra don Felipe Casalduc Goicoechea , don Luciano Ortiz Antón, don Francisco Parra Capó y don Gustavo Rodríguez Acevedo, y por el cual se les prohibe cobrar cantidad alguna á la citada compañía

en concepto de honorarios por su intervención en el juicio arbitral de que se ha hecho referencia, y se les previene se abstengan de llevar adelante el pleito que iniciaran en el Tribunal del Distrito de Ponce contra la expresada compañía en cobro de los referidos honorarios; ordenándoseles, además, lo suspendan, lo mismo que la ejecución de cualquier sentencia que en él hubiese recaído y se encontrase pendiente de cumplimiento.

Junto con esta certificación, presentó otra, expedida por el mismo secretario, de la sentencia interlocutoria pronunciada por la misma Corte de Distrito de los Estados Unidos en tres de abril del año en curso declarando vigente hasta nueva resolución de la Corte, el auto provisional de *injunction* de que se ha hecho referencia y por último otra certificación expedida por el mismo secretario de una orden dictada por el Tribunal del Distrito de Ponce, de fecha diez y ocho de abril de mil novecientos dos, y que se encuentra archivada en la misma Corte de Distrito de los Estados Unidos y por la que se dispuso remitir á dicha Corte Federal ciertas constancias existentes en el referido Tribunal de Distrito, de un pleito iniciado por don Antonio Rodríguez García, contra la compañía de seguros "La Trasatlántica" sobre cobro de un seguro; y cuyos documentos, lo mismo que otro escrito que también presentó el día antes del señalado para la vista y que titula "Un *brief* complementario" dice el abogado de la compañía, los presentaba á la consideración de este Tribunal, por si estimaba en su alta sabiduría que pudieran producir algún efecto en el presente juicio.

Ahora bien; de todos estos antecedentes se derivan diferentes cuestiones, de las cuales la primera, que puede calificarse de previa, es la relativa á los efectos que deba producir el auto de *injunction* decretado por la Corte de Distrito de los Estados Unidos, para Puerto

Rico, contra los demandantes don Felipe Casalduc Goicoechea, don Luciano Ortiz Antón, don Francisco Parra Capó y don Gustavo Rodríguez Acevedo en relación al presente pleito promovido por ellos contra la Compañía de seguros contra incendios "La Trasatlántica" en cobro de los honorarios devengados en el juicio arbitral de referencia, y que se encuentra pendiente en grado en apelación ante esta Corte Suprema .

Respecto de esta cuestión, el juez que suscribe es de parecer, que si bien los demandantes en este pleito están obligados á estar y pasar y á guardar y cumplir en todas sus partes el auto de *injunction* decretado contra ellos por la Corte Federal bajo la responsabilidad que les imponen las leyes, esto se entiende sin perjuicio de la jurisdicción de esta Corte Suprema para continuar conociendo de la alzada pendiente ante ella, toda vez que ni los interesados han pedido nada en contrario, ni el auto de *injunction* contiene prevención alguna por la que pudiera entenderse invadida la jurisdicción de esta Corte Suprema para que se abstuviera de continuar conociendo de la apelación; ni podía contenerla tampoco, puesto que los interdictos prohibitorios ó sea el *injunction* sólo se dan á favor y en contra de una persona, pero no contra los Tribunales de Justicia, con arreglo á los principios que rigen en la jurisprudencia americana, y lo confirma la sección 1a. de la ley votada por la Asamblea Legislativa de esta isla y aprobada en 1o. de marzo de 1902, autorizando los interdictos prohibitorios, según la cual, el *injunction* es un interdicto prohibitorio en forma de mandamiento judicial, expedido bajo el sello de un Tribunal en una acción ó proceso civil, por el cual se requiere á una persona, para que se abstenga de hacer, ó de permitir que se haga, por otros, bajo su intervención, determinada cosa, que infrinja ó perjudique el derecho de otro, y de donde se deduce que es un recurso que la ley

concede para evitar el daño que una persona pueda causar en los derechos ó intereses de un tercero, y cuyos efectos, por consiguiente, sólo pueden alcanzar á las partes litigantes, pero en manera alguna á los Tribunales de Justicia, cuya jurisdicción no puede invadirse ni coartarse por otro Tribunal por medio de un interdicto de esa clase.

Esto aparte de que, no habiéndose presentado esos documentos en la 1a. instancia, ni podido presentarse durante ella, por ser posteriores á la sentencia, no forman parte del récord y por consiguiente, esta Corte no puede tomarlos en consideración para ningún efecto.

La segunda cuestión que surge de estos autos y que tiene también el carácter de previa, es la relativa á la falta de competencia del extinguido Tribunal del Distrito de Ponce para conocer de este litigio, por haberse acumulado, en concepto del abogado de "La Trasatlántica", indebidamente en una sola demanda, diferentes acciones correspondientes á distintos individuos, las que cada una ameritaba una demanda distinta contra la compañía de seguros, por un valor menor de cuatrocientos dollars, y que debieron ventilarse por consiguiente, en juicio verbal ante el juez municipal de Ponce, y no en un juicio de mayor cuantía ante el Tribunal del Distrito, el que carecía de jurisdicción, por lo tanto para conocer de él en primera instancia. Este argumento que adujo en el juicio el abogado defensor de la compañía y que ha reproducido después en esta 2a. instancia, no tiene valor alguno, pues habiéndose establecido la demanda y seguídose el juicio por todos sus trámites, con arreglo á la antigua ley de Enjuiciamiento Civil, ésta en su artículo 156 autorizaba la acumulación en una sola demanda de las acciones que tuviera uno contra varios, ó varios contra uno, siempre que nacieran de un mismo título ó se fundaran en una misma causa de pedir, como sucede en el presente caso, en el que las accio-

nes acumuladas de los demandantes se derivan del compromiso celebrado por don Antonio Rodríguez García y la compañía de seguros "La Trasatlántica" nombrándolos árbitros para fijar el montante de la indemnización que debía pagarse al primero por el valor de las mercaderías destruídas por el incendio y de su intervención en el juicio arbitral celebrado en su consecuencia.

Descartadas estas cuestiones previas, pasemos ahora á ocuparnos de la cuestión principal que se ventila en esta apelación y que se reduce á determinar si la compañía demandada está ó no obligada al pago de los honorarios que le reclaman los demandantes don Felipe Casalduc Goicoechea, don Luciano Ortiz Antón, don Francisco Parra Capó y don Gustavo Rodríguez Acevedo.

Estos fundan su demanda en la cláusula 15 de la póliza expedida por la compañía de seguros contra incendios "La Trasatlántica", al comerciante don Antonio Rodríguez García, en 10 de marzo de 1902, y según la cual las diferencias que pudieran surgir entre el asegurado y la compañía aseguradora, sobre el montante de la indemnización que debiera abonar la compañía al asegurado señor Rodríguez García, debían resolverse precisamente por un arbitrage en la forma que la misma cláusula 15 determina; y que habiendo llegado el caso previsto en dicha cláusula y habiendo sido nombrados árbitros los tres primeros ó sean don Felipe Casalduc y Goicoechea, don Luciano Ortiz Antón y don Francisco Parra Capó, y el oficial de sala del Tribunal del Distrito don Gustavo Rodríguez Acevedo para que interviniera como secretario y autorizara todos los actos del juicio, estaba obligada la compañía de seguros á pagarles la mitad de los honorarios que habían devengado, ó sean doscientos cincuenta dollars á cada uno de los árbitros, y cien dollars al secretario, en cumplimiento de lo prescrito en la misma cláu-

sula 15 y en la escritura de compromiso, de pagar ambas partes de por mitad todos los gastos del arbitramento.

Empero el juez que suscribe entiende que el arbitramento de que se trata, no ha sido celebrado en la forma prescrita en la cláusula 15 de la póliza de referencia; y, por consiguiente, que la compañía demandado no está obligada al pago de los gastos que le reclaman los demandantes.

La cláusula 15, de cuya aplicación se trata en estos autos, copiada á la letra en lo pertinente dice así:

"Todas las diferencias que puedan ocurrir respecto al monto de indemnización, serán juzgadas y fijadas únicamente por el arbitraje, y esto siempre antes que haya sido iniciada alguna demanda judicial por pago de indemnización.

Cuando conforme al deseo de la Compañía, ó del asegurado, el importe de indemnización deba ser fijado por el arbitraje, la sumisión al arbitraje será sujetada á las siguientes condiciones.

Cada parte nombrará su perito por un protocolo ó por escrito.

Si una de las partes, después de ser notificada por la otra parte, á fin de que nombren su perito, y después de haber sido informado del nombramiento del perito de la otra parte, no proceda á nombrar el segundo perito dentro de una semana, el nombramiento del segundo perito será hecho por el Cónsul de Alemania, ó en su defecto por la autoridad local competente.

Los dos peritos, antes de entrar en materia, nombran un tercero para el caso de discordia, quien decidirá sobre cualquier punto discordado, dentro de los límites de la valuación de los mismos peritos.

En el caso que los dos peritos nombrados no pudiesen ponerse de acuerdo respecto al nombramiento del tercer perito, éste será nombrado por el Cónsul de Alemania ú otra autoridad local competente á la solicitud de los dos peritos, ó solamente uno de ellos.

Los gastos del arbitraje, serán soportados por iguales partes entre la Compañía y el asegurado."

Otras estipulaciones contiene la cláusula 15 de la póliza que nos ocupa, pero que no tienen aplicación al presente caso.

Ahora bien; atendido el tenor literal de la cláusula

de que se trata, es de parecer el juez que suscribe, que no autorizaba á los representantes de la compañía aseguradora para comprometer la resolución de sus diferencias sobre el montante de la indemnización de los daños ocasionados por el incendio, á un juicio de árbitros de derecho, y requería en los nombrados la cualidad de letrados y la intervención obligada de un secretario para que diera fe de todos sus actos, sino á un juicio de peritos conocedores de la materia objeto del arbitraje, como se infiere del contexto literal de dicha cláusula en todas sus partes, y que habían de ser nombrados en la manera que la misma expresa, para que sin forma de juicio y con arreglo á su leal saber y entender pronunciaran su fallo sobre los puntos sometidos á su resolución y que se expresan en la misma cláusula 15 de la póliza.

Por consiguiente; si en contravención á lo convenido expresamente en la cláusula 15 tantas veces citada, el asegurado don Antonio Rodríguez García y el alcalde de Ponce don Enrique Chevalier, en representación de la compañía aseguradora, en vez de nombrar un perito cada parte, para que sin forma de juicio y con arreglo á su leal saber y entender resolvieran sus diferencias respecto al montante de la indemnización que debiera abonarse al señor Rodríguez García por el valor de sus mercaderías destruídas por el incendio, comprometieron la resolución de las diferencias surgidas entre el asegurado y la compañía aseguradora, á un juicio de árbitros de derechos que requería en los nombrados como ya se ha dicho, la cualidad de letrados y la intervención de un secretario que autorizara todos sus actos y que además, los obligaba á seguir un juicio por todos sus trámites y con todas las solemnidades que requería la antigua ley de Enjuiciamiento Civil, desnaturalizando así completamente el convenio celebrado por las partes y ocasionándoles, como era natural, mayores gastos, el compromiso así celebrado resulta un

acto nulo que no puede producir efectos eficaces de ningún género contra la compañía demandada, tanto por haberlo celebrado el representante de la compañía, extralimitándose de las instrucciones que contenía la cláusula 15 de la póliza, cuanto por la forma misma de su celebración, toda vez que aplicando inadecuadamente para el nombramiento del árbitro 3o., la regla establecida en la póliza para la designación de un tercer perito para el caso de discordia, hicieron que los arbitros señores Casalduc y Parra Capó, nombraran á su vez un tercer arbitro, que lo fué el señor Ortiz Antón, de lo que resultó un acto nulo é ineficaz á todas luces, puesto que si bien aquel procedimiento que era el establecido en la póliza para el nombramiento de un perito tercero para el caso de discordia, era perfectamente válido y eficaz tratándose de un simple juicio pericial, para un juicio de árbitros resultaba completamente inválido é ineficaz, con arreglo al artículo 790 de la Ley de Enjuiciamiento Civil antigua que regía cuando dicho compromiso tuvo lugar, y según el cual "en ningún caso los interesados podrán conferir á una tercera persona la facultad de hacer la elección ó nombramiento de ninguno de los árbitros"; y cuya designación es precisamente uno de los requisitos que debe contener la escritura de compromiso, bajo pena de nulidad como lo previenen los dos artículos siguientes de la misma ley de trámites.

En mérito de todas las consideraciones expuestas, y de lo que disponen los preceptos citados de la antigua ley procesal, y los artículos 1058, 1616, 1620, 1621 y 1629 del vigente Código Civil, que reproducen exactamente lo que disponían los artículos 1091, 1714, 1718, 1719 y 1727 del antiguo, el primero, ó sea, el 1058 de aplicación general á todos los contratos y según el cual "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mis-

mos'', y los cuatro últimos de aplicación especial al contrato de mandato y según los cuales ''el mandatario no puede traspasar los límites del mandato''; el mandatario queda obligado por la aceptación á cumplir el mandato y responde de los daños y perjuicios que, de no ejecutarlo, se ocasionen al mandante''; ''en la ejecución del mandato, ha de arreglarse el mandatario á las instrucciones del mandante'', y que ''en lo que el mandatario se haya excedido, no queda obligado el mandante, sino cuando lo ratifica expresa ó tácitamente'', lo que no ha tenido lugar en el presente caso. El juez que suscribe, en mérito de todas estas disposiciones legales, es de parecer que los árbitros nombrados por don Antonio Rodríguez García y el alcalde de Ponce don Enrique Chevalier, aquél por su derecho propio y éste como representante de la compañía de seguros ''La Trasatlántica'', carecen de acción para obligar á ésta al pago de los honorarios que le reclaman por sus servicios en el juicio arbitral de referencia, por haber sido nombrados en contravención á las estipulaciones que contenía la cláusula 15 de la póliza del seguro; y en su consecuencia, que la sentencia pronunciada por el extinguido Tribunal del Distrito de Ponce, por la que se condenó á la compañía demandada al pago de los honorarios reclamados por los supuestos árbitros, ha sido dictada con error y debe revocarse, absolviéndose de la demanda á la citada compañía, con las costas de ambas instancias á los demandantes don Felipe Casalduc Goicoechea, don Luciano Ortiz Antón don Francisco Parra Capó y don Gustavo Rodríguez Acevedo·

*Revocada.*

Jueces concurrentes: Sres. Hernández, Figueras, Mac-Leary y Wolf.